**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang**

Civil Action No. 23-cv-00923-NYW-SBP

JASON CASPERSEN,

      Plaintiff,

v.

WESTERN UNION, LLC,

      Defendant.

---

## ORDER ON MOTION TO DISMISS

---

This matter is before the Court on the Motion to Dismiss (or "Motion") filed by Defendant Western Union, LLC. [Doc. 14]. The Court has reviewed the Motion and the related briefing, the applicable case law, and the entire case file, and concludes that oral argument would not materially assist in the resolution of the Motion. For the reasons set forth below, the Motion to Dismiss is respectfully **GRANTED in part** and **DENIED in part**.

### BACKGROUND

The Court draws the following factual background from the Amended Complaint, [Doc. 8], and presumes the well-pleaded allegations are true for purposes of this Order. Plaintiff Jason Caspersen ("Plaintiff" or "Mr. Caspersen") previously worked for Defendant Western Union, LLC ("Defendant" or "Western Union"), most recently as a Senior Systems Administrator. [*Id.* at ¶ 14]. During Plaintiff's employment with the company, Western Union enacted a vaccination policy, effective October 6, 2021, that required all of its employees to be fully vaccinated against COVID-19 as a condition of employment. [*Id.* at ¶ 18]. The policy permitted religious exemptions for

employees who objected to receiving the COVID-19 vaccine based on a sincerely held religious belief. [*Id.* at ¶ 19].

Mr. Caspersen requested a religious exemption from Western Union's vaccination policy. [*Id.* at ¶ 20]. The human resources ("HR") department instructed him to complete a form titled "Request for Accommodation: Sincerely Held Religious Exemption from the Company's COVID-19 Vaccine Requirement." [*Id.* at ¶¶ 21–22; Doc. 14-3 at 1 (capitalization altered)].[1]   The form asks the applicant to "[p]lease identify your particular sincerely held religious belief, practice, and/or observance that you believe conflicts with the Company's vaccination mandate." [Doc. 14-3 at 3]. Mr. Caspersen responded: "I have asked God for direction regarding the current COVID shot requirement. As I have prayed about what to do, the Holy Spirit has moved my heart and conscience that I must not accept the COVID shot." [*Id.* (capitalization altered)]. He further indicated that his religious belief, practice, or observance prevented him from receiving only the COVID-19 vaccine, as opposed to "[a]ll other vaccines" or "[s]ome but not all other vaccines." [*Id.*]. When asked to explain why his sincere belief, practice, or observance prevented him from receiving only the COVID-19 vaccine, Mr. Caspersen responded: "As I stated before, the Holy Spirit has moved on my heart and conscience, and I must not accept the COVID vaccine." [*Id.* at

_____

[1] "A district court may . . . consider documents attached to or referenced in the complaint if they are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1103 (10th Cir. 2017) (quotation omitted). Plaintiff's communications with Defendant are referenced and quoted in his Amended Complaint, *see, e.g.*, [Doc. 8 at ¶¶ 22, 24], and neither Party disputes the documents' authenticity. This Court also notes that neither Party has requested conversion of the instant Motion to Dismiss to one for summary judgment. Accordingly, the Court may consider these documents without converting the Motion to Dismiss into a motion for summary judgment.

4 (capitalization altered)].  Mr. Caspersen signed the form, dated October 15, 2021.  [*Id.* at 6].

That same day,[2] Mr. Caspersen sent an email to the HR department in which he stated:

> I'm writing to request a medical and religious exemption from WesternUnion [sic] COVID shot directive.  I have prayed about how to respond to the COVID shot directive, considering my medical issues, and considering my pro-life and other religious beliefs.  I believe my body belongs to God and is the temple of his Holy Spirit.  (Corinthians 6 19:20)  I believe that innocent life is sacred to God, from conception, to birth, to natural death.  (Jeremiah 1:5).  I believe God's promise that "if anyone lacks wisdom, let him ask of God, who gives to all liberally".
>
> It is against my faith and my conscience to commit sin.  Sin is anything that violates the will of God, as set forth in the Bible, and as impressed upon the heart of the believer by the Holy Spirit.  To keep myself from sin, and receive God's direction in life, I pray and ask God for wisdom and direction daily.  As part of my prayers, I have asked God for direction regarding the current COVID shot requirement.  As I have prayed about what I should do, the Holy Spirit has moved on my heart and conscience that I must ***not*** accept the COVID shot.  If I were to go against the moving of the Holy Spirit, I would be sinning and jeopardizing my relationship with God and violating my conscience.
>
> Jesus said the Holy Spirit will guide each person who repents of their sin and believes upon Him into all truth.  As a believer in Jesus, the Holy Spirit lives in me.  I have been a Christian all my life.  I seek God's will for my life through prayer, reading the Bible, and relying on the power of the Holy Spirit to help me to do God's will.
>
> I'm therefore asking for an exemption from the COVID shot directive so that my conscience can remain clear before God.  Thank you for your consideration.

[Doc. 14-4 at 2 (emphasis in original)]; *see also* [Doc. 8 at ¶ 24].  Plaintiff alleges that he "made clear to Defendant that his objection to the [vaccine] was based in his pro-life views."  [Doc. 8 at ¶ 23].

---

[2] Plaintiff alleges that he sent this email on October 18, 2021.  [Doc. 8 at ¶ 24].  However, the email reflects that it was sent on October 15, 2021.  *See* [Doc. 14-4 at 2].  For purposes of this Order, the Court relies on the date reflected on the email.  *See Clinton v. Sec. Benefit Life Ins. Co.*, 63 F.4th 1264, 1275 (10th Cir. 2023) (explaining that a court need not accept as true allegations that are contradicted by properly considered documents).

On December 3, 2021, Western Union's HR department asked Plaintiff three questions: (1) why his beliefs conflicted with the vaccination policy; (2) whether a congregation that Plaintiff attended has a written policy opposing the COVID-19 vaccine; and (3) why his belief singled out the COVID-19 vaccine. [*Id.* at ¶ 25]. On December 9, 2021, Mr. Caspersen informed Western Union that "he would not answer these questions." [*Id.* at ¶ 26]. According to Plaintiff, he declined to answer "the first question because he had already provided this information" and declined to answer the latter two questions "because they are irrelevant to whether Plaintiff sincerely holds a religious belief regarding the vaccine." [*Id.*].

Western Union denied Plaintiff's request for a religious accommodation on December 27, 2021. [*Id.* at ¶ 27]. Plaintiff alleges that "[a]s the ground for the denial, Defendant falsely asserted based on no evidence whatsoever that Plaintiff does not sincerely hold a religious belief in opposition to the vaccine mandate." [*Id.*]. The email informing Plaintiff of the denial of his request for an accommodation stated:

> We have carefully considered your request for an accommodation to be exempt from the Company's COVID vaccine requirements based on your religious beliefs. We note that in response to Western Union's request for additional information that would enable us to understand and evaluate whether you may qualify for an exemption, you provided very limited information. After reviewing the limited information you provided, the Company has determined that you have not articulated a sincerely held religious belief that presents a conflict with the Company's COVID-19 vaccination requirement. As a result, your request is *denied*.
>
> Therefore, we ask that you take steps to become fully vaccinated by no later than **February 28, 2022**. In the meantime, you may temporarily continue performing your job while refraining from travel, in-person meetings, and site visits.
>
> Your manager is copied in this email for visibility of such decision and to support the execution of this communication.
>
> If by **February 28, 2022**, you are not fully vaccinated, your employment may be terminated.

Please let me know if you have any further questions.

[Doc. 14-5 at 2 (emphasis in original)].  Mr. Caspersen's employment with Western Union was terminated on March 2, 2022.  [Doc. 8 at ¶ 29].  Plaintiff alleges that Western Union "refused to engage in the interactive process" because it "never responded to Plaintiff regarding its position with respect to the accommodations he requested" and did not "offer any other possible accommodations that might have been acceptable to it."  [*Id.* at ¶ 40].  He also alleges that he was "denied a reasonable accommodation" and was "subjected to unequal terms and conditions of employment" "based on his religion (Christianity) and/or in retaliation for engaging in protected activity."  [*Id.* at ¶¶ 28, 30].[3]

Mr. Caspersen initiated this action in state court on February 15, 2023, *see* [Doc. 5 at 2], and filed an Amended Complaint on March 30, 2023, [Doc. 8 at 2].  Mr. Caspersen asserts two claims against Western Union: one claim of religious discrimination, based on an alleged failure to accommodate, in violation of Title VII and the Colorado Anti-Discrimination Act ("CADA") ("Claim One"), [*id.* at ¶¶ 41–52], and one claim of religious discrimination, based on alleged wrongful termination, in violation of Title VII and CADA ("Claim Two").  [*Id.* at ¶¶ 53–59].  Western Union removed the case to federal court on April 13, 2023, [Doc. 1], and filed its Motion to Dismiss on May 1, 2023.  [Doc. 14].  In the Motion, Defendant contends that, with respect to both claims, Mr. Caspersen fails to state a claim upon which relief could be granted under Rule 12(b)(6).  [*Id.* at 7–15]; *see also* [Doc. 18].  Mr. Caspersen disagrees, asserting that he has adequately alleged his religious discrimination claims.  *See generally* [Doc. 16].  The Court considers the Parties' arguments below.

---

[3] Mr. Caspersen does not assert a Title VII retaliation claim.  *See generally* [Doc. 8].

## LEGAL STANDARD

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), the Court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). Nevertheless, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (explaining that plausibility refers "to the scope of the allegations in a complaint," and that the allegations must be sufficient to nudge a plaintiff's claims "across the line from conceivable to plausible"). The ultimate duty of the Court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

## ANALYSIS

Title VII makes it "an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion." 42 U.S.C. § 2000e-2(a)(1). "Religion" includes "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship

on the conduct of the employer's business." *Id.* § 2000e(j). Thus, Title VII obligates an employer to reasonably accommodate its employees' religious beliefs and practices, unless the employer "can demonstrate that an undue hardship would in fact result from each available alternative method of accommodation." 29 C.F.R. § 1605.2(c)(1). Similarly, CADA makes it unlawful for an employer to "to refuse to hire, to discharge, to promote or demote, to harass during the course of employment, or to discriminate in matters of compensation, terms, conditions, or privileges of employment" because of the employee's religion. Colo. Rev. Stat. § 24-34-402(1)(a)(I).

CADA states that "[e]xcept when federal law is silent on the issue, this section [of CADA] shall be construed, interpreted, and applied in a manner that is consistent with standards established through judicial interpretation of Title VII." Colo. Rev. Stat. § 24-34-405(6). In other words, "[t]he substantive analysis for the state law anti-discrimination . . . claims is identical to that under Title VII." *Barrington v. United Airlines, Inc.*, 566 F. Supp. 3d 1102, 1107 n.2 (D. Colo. 2021); *see also Johnson v. Weld Cnty.*, 594 F.3d 1202, 1219 n.11 (10th Cir. 2010). The Parties agree that Plaintiff's claims are subject to the same standards under Title VII and CADA and do not contend that these statutes require separate analyses. [Doc. 14 at 6 n.6; Doc. 16 at 2 n.1].

## I.    Claim One

Plaintiff's first claim is captioned "Violation of Title VII and CADA – Religious Discrimination Failure to Accommodate." [Doc. 8 at 6]. However, Tenth Circuit and Supreme Court precedent instructs that a "failure to accommodate" claim does not exist as a freestanding claim under Title VII. The Tenth Circuit has "required an adverse employment action"—i.e., something *in addition to* the failure to accommodate—"to support Title VII religious-accommodation claims." *Exby-Stolley v. Bd. of Cnty. Comm'rs*, 979 F.3d 784, 793 n.3 (10th Cir. 2020) (emphasis omitted); *see also E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768,

774 (2015) ("[Title VII's] disparate-treatment provision prohibits actions taken with the *motive* of avoiding the need for accommodating a religious practice." (emphasis in original)).  "[A]ny claim under Title VII must necessarily be brought under the rubric of a disparate-treatment claim or disparate-impact claim," *Exby-Stolley*, 979 F.3d at 793 n.3, and a "failure to accommodate is not a freestanding, separate claim: It is one way of proving disparate treatment," *Enriquez v. Gemini Motor Transp. LP*, No. CV-19-04759-PHX-GMS, 2021 WL 5908208, at *10 (D. Ariz. Dec. 14, 2021).

The Parties appear to agree on the required elements of a prima facie Title VII discrimination claim based on an alleged failure to accommodate.  To establish a prima facie case of discrimination using this theory, a claimant must establish that "1) the employee has a bona fide religious belief that conflicts with a job requirement, 2) the employee informed the employer of this conflict; and 3) the employer fired the employee for failing to comply with the job requirement." *Tabura v. Kellogg USA*, 880 F.3d 544, 549 (10th Cir. 2018).  However, the Court is mindful that "'an employment discrimination plaintiff need not plead a prima facie case of discrimination' to survive a motion to dismiss." *Johnston v. Hunter Douglas Window Fashions, Inc.*, 715 F. App'x 827, 830 (10th Cir. 2017) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002)).  Indeed, in employment discrimination cases, "[t]he prima facie case under [*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)] . . ., is an evidentiary standard, not a pleading requirement." *Swierkiewicz*, 534 U.S. at 510.  To survive a Rule 12(b)(6) motion, a plaintiff "must satisfy only the simple requirements of Rule 8(a)." *Id.* at 513.

"While the 12(b)(6) standard does not require that Plaintiff establish a prima facie case in her complaint, the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim." *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012).

Because both Parties rely on the elements of a prima facie case of discrimination in advocating for and against dismissal of Claim One, *see* [Doc. 14 at 7; Doc. 16 at 2], the Court similarly uses these factors as a guide to determine whether Mr. Caspersen has stated a discrimination claim under Rule 12(b)(6).  *See EEOC v. JBS USA, LLC*, 481 F. Supp. 3d 1204, 1218–20 (D. Colo. 2020) (relying on the prima facie elements to determine whether the EEOC had stated a religious discrimination claim based on a failure to accommodate).

As mentioned above, a prima facie discrimination claim consists of three elements: (1) the employee has a bona fide religious belief that conflicts with a job requirement; (2) the employee informed the employer of this conflict; and (3) the employer terminated the employee for failure to comply with the job requirement.  *Tabura*, 880 F.3d at 549.  Western Union primarily challenges Plaintiff's allegations with respect to the first element, asserting that he "has not plausibly alleged a sincerely held religious belief nor that the belief actually conflicted with the mandate." [Doc. 14 at 7 (capitalization altered)].  The nature of Defendant's challenge appears to be that Mr. Caspersen's beliefs may be sincerely held, but he has not established that they are religious in nature (as opposed to merely personal), and he has not sufficiently alleged a connection between his beliefs and his objection to the COVID-19 vaccine.  [*Id.* at 8–9].  In the alternative, Western Union contends that this discrimination claim fails because, based on Mr. Caspersen's own allegations, he failed to engage in the interactive accommodation process with Defendant.  [*Id.* at 11–13].

### A.    The Religiosity of Plaintiff's Beliefs

"Whether one's beliefs and practices are religiously motivated is . . . a difficult question for courts of law to decide." *Ellison v. Inova Health Care Servs.*, No. 1:23-cv-00132 (MSN/LRV), 2023 WL 6038016, at *4 (E.D. Va. Sept. 14, 2023) (citing *Doswell v. Smith*, 139 F.3d 888 (4th

Cir. 1998)).  "[I]t is not for this Court to make 'a scriptural determination' to the legitimacy or quality of a plaintiff's religious beliefs." *Blackwell v. Lehigh Valley Health Network*, No. 5:22-cv-03360-JMG, 2023 WL 362392, at *6 (E.D. Pa. Jan. 23, 2023) (quoting *Ambrose v. Gabay Ent & Assocs., P.C.*, No. 12-5453, 2013 WL 4195387, at *5 (E.D. Pa. Aug. 15, 2013)).  But the Court "can, and must, ensure that a plaintiff's beliefs are religious, as opposed to being 'essentially political, sociological, or philosophical.'" *Aliano v. Twp. of Maplewood*, No. 22-cv-5598 (ES) (AME), 2023 WL 4398493, at *5 (D.N.J. July 7, 2023) (quoting *Fallon v. Mercy Cath. Med. Ctr. of Se. Pa.*, 877 F.3d 487, 490 (3d Cir. 2017)).

"To evaluate the religiosity of a belief system," the Tenth Circuit has previously weighed five factors: ultimate ideas, metaphysical beliefs, moral or ethical system, comprehensiveness of beliefs, and accoutrements of religion.  *Hale v. Fed. Bureau of Prisons*, 759 F. App'x 741, 746 (10th Cir. 2019) (summary-judgment case).  Neither Party directly addresses these factors.  *See generally* [Doc. 14; Doc. 16].  Instead, Western Union directs the Court to the Third Circuit case of *Africa v. Pennsylvania*, 662 F.2d 1025 (3d Cir. 1981).  *See* [Doc. 14 at 7].  In *Africa*, the Third Circuit observed that:

> First, a religion addresses fundamental and ultimate questions having to do with deep and imponderable matters.  Second, a religion is comprehensive in nature; it consists of a belief-system as opposed to an isolated teaching.  Third, a religion often can be recognized by the presence of certain formal and external signs.

662 F.2d at 1032.  Courts have relied on these observations, known as the "*Africa* factors," to assess the religiosity of a plaintiff's belief system.  *See, e.g.*, *Ellison*, 2023 WL 6038016, at *4 ("[I]n determining whether an employee's beliefs are religious in nature, courts have analyzed whether the beliefs in question (1) 'address fundamental and ultimate questions having to do with deep and imponderable matters,' (2) are 'comprehensive in nature,' and (3) 'are accompanied by certain formal and external signs.'" (quoting *Africa*, 662 F.2d at 1032)).

In its Motion to Dismiss, Western Union appears to suggest that the *Africa* factors are akin to pleading requirements that must be affirmatively alleged to state a plausible claim. *See* [Doc. 14 at 7 ("To survive the Motion to Dismiss, Caspersen needed to allege three factors that establish his objection was based in religion: (1) his objection addresses fundamental and ultimate questions related to 'deep and imponderable matters;' (2) the objection is part of a comprehensive belief system and is not an isolated teaching; and (3) formal and external signs accompany the objection." (quoting *Africa*, 662 F.2d at 1032))]. However, Defendant cites to no Tenth Circuit case law adopting any such affirmative pleading requirements at the motion-to-dismiss stage. *See* [*id.* at 7–8; Doc. 18 at 5–6]. At best, it cites to the Tenth Circuit's unpublished *Hale* decision, wherein the Tenth Circuit considered five factors, which partially overlap with the *Africa* factors, to assess the plaintiff's belief system of "Creativity" at the summary-judgment stage. *See* [Doc. 18 at 6 (citing *Hale*, 745 F. App'x at 746–47)]; *see also Hale*, 759 F. App'x at 746–48 (addressing the five factors outlined in *United States v. Meyers*, 95 F.3d 1475, 1482 (10th Cir. 1996), in evaluating the religiosity of the plaintiff's belief system). Furthermore, the Court notes that district courts relying on the *Africa* factors to evaluate the religiosity of a plaintiff's beliefs look to these factors as a guide, rather than as a list of elemental pleading requirements that must all be established at the pleading stage. *See, e.g.*, *Ellison*, 2023 WL 6038016, at *4 & n.6 (explaining that courts "have cited *Africa* with approval when describing the useful indicia for evaluating whether beliefs are religious rather than secular" (quotation omitted)); *Aliano*, 2023 WL 4398493, at *5 ("[T]he Third Circuit has adopted three factors—the *Africa* factors—to consider when determining whether a belief is 'religious' in nature." (quoting *Africa*, 662 F.2d at 1032)); *Kiel v. Mayo Clinic Health Sys. Se. Minn.*, No. CV 22-1319 (JRT/ECW), 2023 WL 5000255, at *7 (D. Minn. Aug. 4, 2023) ("In determining whether a belief is religious, the Eighth Circuit considers whether the objections

address 'fundamental and ultimate questions having to do with deep and imponderable matters,' if the teachings are 'comprehensive in nature' or isolated, and if there are 'certain formal and external signs' present."  (quoting *Love v. Reed*, 216 F.3d 682, 687 (8th Cir. 2000)), *appeal docketed*, No. 23-2996 (8th Cir. Sept. 1, 2023).  Given the Tenth Circuit's instruction that a plaintiff need not plead a prima facie discrimination case to survive a motion to dismiss, *Khalik*, 671 F.3d at 1192, the Court is not persuaded that the Tenth Circuit would require a plaintiff to plead facts affirmatively establishing each of the *Africa* elements to survive a motion to dismiss; rather, they are more appropriately described as a framework to determine whether Mr. Caspersen has adequately alleged a belief grounded in religion.[4]

"[T]o adequately plead a 'religious belief,' a plaintiff must allege some facts regarding the nature of her belief system, as well as facts connecting her objection to that belief system." *Aliano*, 2023 WL 4398493, at *5.  "Conclusory allegations that a belief is religious are therefore insufficient; rather, a plaintiff must allege *how* her objection is based upon *a religious* belief.  In other words, she must demonstrate that her objection arises from a subjective belief that is tied to her belief system which meets the *Africa* factors." *Id.*

A fair number of district courts throughout the country have been faced with similar factual circumstances and corresponding legal arguments at the pleading stage.  In *Passarella v. Aspirus, Inc.*, No. 22-cv-287-JDP, 2023 WL 2455681 (W.D. Wis. Mar. 10, 2023), *appeal docketed*, No.

---

[4] Plaintiff argues that *Africa* "is not an appropriate authority for resolution of" the Motion to Dismiss because *Africa* involved a motion for preliminary injunction, which Plaintiff asserts requires a "heavier burden."  [Doc. 16 at 14].  However, the Court notes that a number of district courts have relied on the *Africa* considerations in evaluating the religiosity of a certain belief or belief system, including a number of cases with substantially similar factual allegations as those raised by Plaintiff here.  *See, e.g.*, *Ellison*, 2023 WL 6038016, at *4; *Aliano*, 2023 WL 4398493, at *5; *Winans v. Cox Auto., Inc.*, No. CV 22-3826, --- F. Supp. 3d ---, 2023 WL 2975872, at *4 (E.D. Pa. Apr. 17, 2023); *Ulrich v. Lancaster Gen. Health*, No. CV 22-4945, 2023 WL 2939585, at *5 (E.D. Pa. Apr. 13, 2023).

23-1660 (7th Cir. Apr. 5, 2023), a plaintiff requested religious exemptions from her employer's

COVID-19 vaccination requirement, stating:

> After prayerful consideration, I don't feel at peace about receiving the COVID vaccine. I believe that I must trust God with my body (His temple) and that he will provide for me and protect me as he has already proven time and time again during my life. . . . Although, I have received other vaccines, in which my "sincerely held belief" might be brought into question, to which I would respond, I have made shrewd decisions regarding the vaccines I put into my body. One example of this is the Gardasil vaccine. I have not received this vaccine, as there is plenty of evidence of adverse, debilitating injuries resulting from receiving the vaccine. Although it comes highly recommended by physicians, it goes against my conscience to receive it; therefore, I abide by that, as I know it is a message from God. James 4:17 states that failing to obey our conscience is a sin. Therefore, this means receiving the vaccine would not be acting in accordance with God. It would be a sin for me to receive it.

*Id.* at *3. The Western District of Wisconsin court observed that the plaintiff's objections were

based on a belief that she "must live a healthful life and not do anything to harm her body," but

found that the plaintiff had identified "no religious belief that would prevent [her] from taking the

vaccine if she believed it was safe." *Id.* at *5. The court concluded that although the plaintiff had

"couched [her] request[] in religious terms, claiming that [her] decision[] had been ratified by

prayer," this was insufficient to adequately plead a religion-based objection to the employment

requirement, as "the use of religious vocabulary does not elevate a personal medical judgment to

a matter of protected religion." *Id.* at *6.

Similarly, in *Winans v. Cox Automotive, Inc.*, No. CV 22-3826, --- F. Supp. 3d ----, 2023

WL 2975872, at *1 (E.D. Pa. Apr. 17, 2023), a plaintiff requested a religious exemption from his

employer's COVID-19 vaccination requirement on grounds that, *inter alia*, the vaccine was

ineffective and/or subjected him to adverse side effects and "the vaccine was developed and

produced with the use of fetal cell lines derived from aborted fetuses, which violates his religious

beliefs." *Id.* at *1. The court concluded that the plaintiff's complaint "primarily detail[ed]

Plaintiff's purely scientific, personal, and medical objections to the vaccine, including his belief that the vaccine is ineffective and his concerns with its potential side effects." *Id.* at *4. Furthermore, while the plaintiff alleged that he held "sincere concerns surrounding" the use of fetal cell lines in vaccine development, the complaint failed to allege that the plaintiff's concerns arose "out of any comprehensive religion—formal or informal—that [drove] the way he thinks about 'deep and imponderable matters'" and failed to "identify *why* [the p]laintiff object[ed] to the use of fetal cell lines in the development of the COVID-19 vaccine." *Id.* (quoting *Fallon*, 877 F.3d at 491). For these reasons, the court concluded that it could not "reasonably infer, based on the facts alleged in the Complaint, that [the plaintiff's] concerns [we]re religious in nature" and dismissed the plaintiff's religious discrimination claim under Title VII. *Id.*

On the other hand, in *Ellison*, the court concluded that a plaintiff's stated basis for requesting a religious accommodation—related to fetal tissue—was sufficient to allege a religious belief to survive a motion under Rule 12(b)(6). In this case, one plaintiff expressed that "he had a sincerely held religious belief in the sanctity of human life and that—because he sincerely believed that the use of these bodily remains renders these vaccines unclean,—he could not comply with the policy for that reason." *Ellison*, 2023 WL 6038016, at *6 (alteration marks and quotation omitted). The court noted that this plaintiff had (1) "refer[red] to verses in the Christian Bible that, in his view, support the notion that 'life begins at conception'" and (2) explained why "in his view, receiving the vaccine would amount to sin." *Id.* "Based on these statements," the court concluded that the plaintiff's accommodation request "provide[d] sufficient allegations regarding his subjective personal beliefs, how those beliefs are related to his faith, and how those beliefs form the basis of his objection to the COVID-19 vaccination." *Id.* The court reached the opposite conclusion with respect to another plaintiff who alleged only that she had "religious objections to

abortion, and to receiving vaccines that were testing [sic] or produced using materials derived from abortion." *Id.* at *7. The court concluded that this singular statement "fail[ed] to provide a sufficient connection between [the plaintiff's] objection to the COVID-19 vaccines . . . and her subjective religious beliefs." *Id.*

Finally, in *Aliano*, a plaintiff objected to a vaccination requirement by stating that "as a Christian, [he] cannot according to [his] beliefs and conscience, use these products that have origins in abortion," explaining that the "authority [he] adhere[s] to is The Holy Bible and that authority is derived from God" and identifying "a Bible passage that provides the foundation for his belief that 'the inmost being is sacrosanct,' which in turn provides the religious basis for his objection to abortion." 2023 WL 4398493, at *7 (first two alterations added). Another plaintiff self-identified as a "strict practicing Irish Catholic" and stated that he believed that "[b]y willingly putting any manmade inoculation into [his] body, [he is] desecrating [his] temple," citing a Bible verse in support. *Id.* at *8. The court, though acknowledging that these were "close" calls, agreed that these plaintiffs had "provide[d] the Court with adequate insight into [their] subjective beliefs, how those beliefs arise from [their] religious belief-system[s], and how those beliefs form the basis of [their] objection[s] to the COVID-19 vaccinations to survive a motion to dismiss." *Id.* at *7–8; *compare id.* at *10 (the *Aliano* court concluding that another plaintiff failed to adequately allege religious beliefs where he stated that "using aborted fetal cells and/or aborted fetal cell lines" was "in direct conflict with [his] religious beliefs" but "did not provide any additional information regarding the nature of his beliefs as a Roman Catholic, including how receiving the COVID-19 vaccine would violate those beliefs").

Like *Aliano*, the Court finds this case to be a close call. In Plaintiff's original exemption form, he uses religious terms and generally references his religious beliefs and prayer as a basis

for his objection to the COVID-19 vaccine, but he does not expressly explain why his religion forms the basis of his objection. *See* [Doc. 14-3 at 3–4; Doc. 8 at ¶ 22]. Standing alone, the Court would likely conclude that these statements are insufficient to plausibly allege an identified religious belief that conflicts with Defendant's vaccination requirement, given Plaintiff's failure to identify "facts regarding the nature of [his] belief system, as well as facts connecting [his] objection to that belief system." *Aliano*, 2023 WL 4398493, at *5; *Passarella*, 2023 WL 2455681, at *5; *cf. McKinley v. Princeton Univ.*, No. CV 22-5069 (MAS) (TJB), 2023 WL 3168026, at *2 (D.N.J. Apr. 28, 2023) (dismissing claim under Rule 12(b)(6) where the complaint "[did] not identify or specify any religious belief that prevents her from complying with the COVID-19 Policies"). But as Defendant acknowledges, Plaintiff then, on the same day, followed up his exemption-request form via email, reiterating his request for a religious exemption. [Doc. 14-4 at 2]. In that email, Mr. Caspersen states that he "ha[s] been a Christian all [his] life" and had "prayed about how to respond to the COVID shot directive, considering [his] medical issues, and considering [his] pro-life and other religious beliefs." [*Id.*]. He continues that he "believe[s] that innocent life is sacred to God, from conception, to birth, to natural death," citing a Bible verse in support. [*Id.*]. He then explains that it is "against [his] faith and [his] conscience to commit sin," states that, in his view, if he were to receive the COVID-19 vaccine, he "would be sinning and jeopardizing [his] relationship with God," and requests "an exemption from the COVID shot directive so that [his] conscience can remain clear before God." [*Id.*]. And unlike some analogous cases, Mr. Caspersen did not raise any express medical, scientific, or political objections to the COVID-19 vaccine in this email, which might have cut against a finding that his beliefs are religious in nature. *Compare Reichert v. Infusion Partners, L.L.C.*, No. CV 22-5450, 2023 WL 4685377, at *4 (E.D. La. July 21, 2023) ("Plaintiff's Complaint is replete with medical arguments

as to why Defendants' policy was inadvisable and accusations that Defendants were motivated by advertising and 'virtue signaling.'  These allegations suggest that Plaintiff's beliefs regarding the COVID-19 vaccine were based on purely secular considerations or were merely a matter of personal preference."); *Passarella*, 2023 WL 2455681, at *6 ("Dottenwhy and Passarella refused the vaccine based on their personal judgments about vaccine safety and not for religious reasons.").

While Plaintiff's statements explaining the basis for his religious objection are not scrupulously detailed, the Court concludes that these statements, taken together, are sufficient at the pleading stage to survive Defendant's Motion to Dismiss.  Plaintiff alleges that his objection was "based in his pro-life views," [Doc. 8 at ¶ 23], and in his email, he referenced his "pro-life . . . beliefs," stated his belief that "innocent life is sacred to God, from conception, to birth, to natural death," and explained that he viewed receiving the COVID-19 vaccine to constitute a sin, [Doc. 14-4 at 2].  And Defendant's accommodation form acknowledges the possibility of a request for an "exemption request relat[ing] to the use of fetal cells in the testing and development of certain COVID-19 vaccines."  *See* [Doc. 14-3 at 5].  Plaintiff's allegations identify his religious beliefs, which appear to be tied to "ultimate ideas," *see Leeck v. Lehigh Valley Health Network*, No. 5:22-CV-4634, 2023 WL 4147223, at *5 (E.D. Pa. June 23, 2023) (explaining that "[t]o satisfy [*Africa*'s] 'ultimate ideas criterion,' a belief must deal with such things as 'life and death, right and wrong, and good and evil' or 'underlying theories of man's nature or his place in the Universe'" (quoting *Africa*, 662 F.2d at 1033)), and sufficiently put Defendant on notice of the nature of his objection such that they "provide[] the Court with adequate insight into his subjective beliefs, how those beliefs arise from his religious belief-system, and how those beliefs form the basis of his objection to the COVID-19 vaccinations to survive a motion to dismiss," *Aliano*, 2023

WL 4398493, at *8; *see also Ellison*, 2023 WL 6038016, at *6.[5]  In so ruling, the Court is mindful that it must construe Plaintiff's allegations in his favor, *Casanova*, 595 F.3d at 1124, and Mr. Caspersen need not, at this stage, establish a prima facie discrimination case; instead, he must only put forth "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," *Iqbal*, 556 U.S. at 678 (quotation omitted); *Khalik*, 671 F.3d at 1192.  For all of these reasons, the Court cannot conclude that Defendant's argument warrants dismissal of Claim One at this time.

### B.      Refusal to Engage in the Interactive Process

In the alternative, Defendant asserts that Mr. Caspersen's failure-to-accommodate claim must fail because, based on the allegations in the Amended Complaint, Mr. Caspersen failed to participate in the interactive process necessary for obtaining an accommodation.  [Doc. 14 at 11–13].  Mr. Caspersen responds that he was justified in his actions because "Western Union had sufficient information to determine that the COVID-19 mandate conflicted with Caspersen's sincerely held religious beliefs, and the parts of the form that Caspersen did not complete were improper."  [Doc. 16 at 17].

In the Americans With Disabilities Act ("ADA") context, the Tenth Circuit has instructed that an "employee may not terminate the interactive process quickly to create liability."  *Dansie v. Union Pac. R.R. Co.*, 42 F.4th 1184, 1194 (10th Cir. 2022); *see also Albert v. Smith's Food &*

---

[5] While Western Union acknowledges that Plaintiff "linked his objection to a prolife stance," it highlights that Plaintiff also "refused to attest that his prolife view extended to medication beyond the COVID-19 vaccine to other vaccines that use the same testing methods or common medications that have utilized fetal cell lines in confirmatory, quality-assurance, and/or other testing." [Doc. 14 at 9].  Insofar as Defendant requests that the Court weigh evidence or construe allegations in Defendant's favor, the Court cannot do so.  Indeed, this sort of "fact intensive inquiry is more appropriate at a later stage" in this case.  *Shane v. Bio-Techne Corp.*, No. CV 22-3039 (JWB/ECW), 2023 WL 3936638, at *5 (D. Minn. June 9, 2023).

*Drug Ctrs., Inc.*, 356 F.3d 1242, 1253 (10th Cir. 2004).  Western Union has not cited to any legal authority setting out this same standard in the Title VII discrimination context and does not put forth an argument asking the Court to find that this same standard applies in Title VII cases.  *See* [Doc. 14 at 11–13].  Given the distinctions between the ADA and Title VII (namely, the lack of a standalone failure-to-accommodate claim under Title VII), *see Exby-Stolley*, 979 F.3d at 793–94, the Court declines to decide whether this requirement applies here, given the lack of analysis from the Parties.  *See Lebahn v. Owens*, 813 F.3d 1300, 1307–08 (10th Cir. 2016) (noting that a court has no obligations to raise arguments for parties).

Even assuming (without deciding) that an employee's failure to engage in the interactive process may insulate an employer from liability for a failure to accommodate, the Court cannot conclude that this is a sufficient basis to dismiss Plaintiff's first claim.  Mr. Caspersen alleges that he worked from home for two years prior to his termination with no objection from Western Union; that he could have continued to work from home as a reasonable accommodation; that Defendant did not explain its position with respect to his requested accommodation, identify what accommodation(s) would be an "undue burden," or explain why Plaintiff could not work from home; and that "it was Defendant, not Plaintiff, that refused to engage in the interactive process." [Doc. 8 at ¶¶ 32, 34, 36–40].  The Court accepts these allegations as true, as it must.  Insofar as Defendant has a different interpretation of the timeline of events underlying this case, its arguments will be more appropriately presented after discovery.  The Motion to Dismiss is therefore **DENIED** with respect to Claim One.

## II.   Claim Two

Plaintiff's second claim is titled "Violation of Title VII and CADA – Religious Discrimination Wrongful Termination."  [Doc. 8 at 7].  Western Union seeks dismissal of this

claim because Plaintiff fails to allege that there were employees outside of his protected class who were treated differently than he was.  [Doc. 14 at 14].  Mr. Caspersen responds that "Western Union's argument is based on its apparent confusion about the nature of [his] second claim," maintaining that he "did not bring a racial disparate [treatment] claim," but has "brought and plausibly pled a Title VII wrongful termination claim."  [Doc. 16 at 20].[6]  He asserts that

> A prima facie Title VII case for wrongful termination based on religious discrimination consists of the following three elements: (1) the employee had a bona fide religious belief that conflicted with an employment requirement; (2) he informed his employer of this belief; and (3) he was fired for failure to comply with the conflicting employment requirement.

[Doc. 16 at 19 (citing *Thomas v. Nat'l Ass'n of Letter Carriers*, 225 F.3d 1149, 1155 (10th Cir. 2000))].

The elements that Plaintiff insists form the basis of a "Title VII case for wrongful termination based on religious discrimination," [*id.*], are identical to a prima facia Title VII "failure-to-accommodate" claim.  Indeed, in *Thomas*, the case cited by Plaintiff, the Tenth Circuit set forth the necessarily elements of "a religious discrimination claim *of failure to accommodate*." *Thomas*, 225 F.3d at 1155 (emphasis added); *see also* [Doc. 16 at 2 (Plaintiff setting out the same elements for a failure-to-accommodate discrimination claim)].  It appears to the Court that Plaintiff has essentially split a singular discrimination claim into two separate claims—one based on Defendant's alleged failure to provide an accommodation, *see* [Doc. 8 at ¶¶ 41–52], and one based

---

[6] Although Mr. Caspersen states that he "did not bring a racial disparate impact claim," [Doc. 16 at 20], the Court assumes he intended to disclaim a disparate *treatment* claim, given that the case he attempts to distinguish, *McAlester v. United Air Lines, Inc.*, 851 F.2d 1249, 1253 (10th Cir. 1988), involves a disparate-treatment claim.  Indeed, Mr. Caspersen acknowledges this in his brief. *See* [Doc. 16 at 20].  To the extent Plaintiff attempts to distinguish *McAlester* on the basis that the plaintiff in *McAlester* alleged *racial* discrimination, while he alleges *religious* discrimination, *see* [*id.*], he cites no legal authority for the proposition that discrimination claims are treated differently based on the alleged basis of the discriminatory treatment.

on Defendant's eventual termination of Plaintiff, *see* [*id.* at ¶¶ 53–59]. But as explained above, a discrimination claim based on a failure-to-accommodate theory requires *both* a lack of accommodation *and* an adverse employment action. *See EEOC v. JBS USA, LLC*, 339 F. Supp. 3d 1135, 1175–76 (D. Colo. 2018) (there is no "freestanding" failure-to-accommodate claim, and a separate adverse action aside from the lack of accommodation is a necessary element); *see also Tabura*, 880 F.3d at 549 (setting out the required elements). Plaintiff does not explain why he may assert what are essentially duplicative claims, based on the same elements, nor does Plaintiff cite to any legal authority actually supporting his suggestion that a "Title VII wrongful termination claim" requires the same three elements as, but is distinct from, a failure-to-accommodate claim. [Doc. 16 at 19–20]. And although Plaintiff suggests that he does not intend to bring a disparate-treatment claim, [*id.* at 20], Supreme Court authority is clear that there are only two types of Title VII claims: disparate treatment and disparate impact. Because the Court is not persuaded by Mr. Caspersen's argument with respect to the elements of his second claim, the Court will analyze his second claim under the traditional Title VII disparate treatment framework.

Plaintiff alleges that "Defendant terminated [his] employment . . . after he refused to violate his conscience by subjecting himself to Defendant's vaccination mandate." [Doc. 8 at ¶ 56]. "In a disparate treatment claim relating to termination for violation of a work rule, a prima facie case is established" if the claimant "shows '(i) that the plaintiff belongs to a protected class; (ii) that he was discharged for violating a work rule; and (iii) that similarly situated . . . employees [not in the employee's protected class] were treated differently.'" *E.E.O.C. v. Flasher Co.*, 986 F.2d 1312, 1316 (10th Cir. 1992) (alteration marks changed) (quoting *McAlester*, 851 F.2d at 1260). The Tenth Circuit has also described the prima facie case as being comprised of the following three elements: (1) the plaintiff belongs to a protected class; (2) the plaintiff suffered an adverse

employment action; and (3) there are circumstances giving rise to an inference of discrimination. *Ibrahim v. All. for Sustainable Energy, LLC*, 994 F.3d 1193, 1196 (10th Cir. 2021). "An inference of discrimination can arise from an employer's favoritism toward a similarly situated employee who is not part of the protected class." *Id.*

The Amended Complaint does not identify any employees outside of Mr. Caspersen's protected class who were treated more favorably than he was; he does not allege, for example, that colleagues of different religions or of no religion similarly declined to comply with the vaccination requirement and were permitted to keep their jobs, or that he or his protected class were singled out with respect to the vaccination requirement. *See generally* [Doc. 8]. He alleges instead that Western Union required "*all* employees to be fully vaccinated against COVID-19 as a condition of employment." [*Id.* at ¶ 18]. Nor does Plaintiff raise any allegations suggesting religious animus on the part of Defendant, e.g., "actions or remarks made by decisionmakers," or "the timing or sequence of events leading to plaintiff's termination," *Barlow v. C.R. England, Inc.*, 703 F.3d 497, 505 (10th Cir. 2012), so as to plead the existence of "circumstances giv[ing] rise to an inference of discrimination," *Ibrahim*, 994 F.3d at 1196; *see also Allison v. Digital Mgmt. Inc.*, No. 13-cv-00760-CMA-CBS, 2013 WL 5862647, at *4 (D. Colo. Oct. 31, 2013) (concluding that the plaintiff failed to state a religious discrimination claim where he failed to allege supporting facts tying his termination to his religion).

Without any allegations of disparate treatment or circumstances suggesting religious discrimination, Mr. Caspersen's Amended Complaint simply asserts already-drawn inferences, without supporting factual allegations, which fail to plausibly allege that he was terminated on the basis of his religion when others of different religions who refused the COVID-19 immunization were not terminated; instead, his allegations suggest only that he was terminated for failure to

comply with a condition of employment.  As a result, the Court finds that Mr. Caspersen fails to state a claim of discrimination under Rule 12(b)(6), insofar as his claim is based only on his "wrongful termination" and is separate from his claim based on a failure to accommodate.  *See Shane v. Bio-Techne Corp.*, No. CV 22-3039 (JWB/ECW), 2023 WL 3936638, at *6 (D. Minn. June 9, 2023) (even where the plaintiff successfully stated a Title VII failure-to-accommodate claim, dismissing "separate claim of direct religious discrimination" for failure to state a claim where the plaintiff "[did] not allege that he was replaced by a non-religious worker or by a religious worker who did not request a vaccine exemption" or that his employer "discharged him for any plausible reason other than his non-compliance with a mandatory vaccination policy that applied to all U.S.-based employees"); *cf. Tipcke v. Olmsted Med. Ctr.*, No. CV 22-2470 ADM/JFD, 2023 WL 2776098, at *3 (D. Minn. Apr. 4, 2023) (dismissing discrimination claim under the Minnesota Human Rights Act where the plaintiff "[did] not allege any facts to show that she was treated differently from other employees because of her religious beliefs" but instead alleged "that she was discharged for failing to comply with an employment policy that applied to all employees").  For these reasons, the Motion to Dismiss is **GRANTED** with respect to Claim Two.  Claim Two is **DISMISSED without prejudice** under Rule 12(b)(6).[7]

---

[7] Defendant seeks dismissal of Plaintiff's claim "with prejudice," but raises no argument in support of this request and does not address the standard for dismissal with prejudice.  [Doc. 14 at 15].  "A dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile."  *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006).  The Court declines to undertake, *sua sponte*, a futility analysis and instead dismisses Plaintiff's second claim without prejudice.

## CONCLUSION

For the reasons stated herein, it is hereby **ORDERED** that:

(1)     Defendant's Motion to Dismiss [Doc. 14] is **GRANTED in part and DENIED in part**; and

(2)     Plaintiff's second claim is **DISMISSED without prejudice**.

DATED:  October 10, 2023                           BY THE COURT:

                                                   _____
                                                   Nina Y. Wang
                                                   United States District Judge